UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMER MANSOUR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-0921 |
| | § | |
| EXPRESSJET AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Expressjet Airlines, Inc.'s Motion for Summary Judgment (Dkt. #10). The motion is ripe for ruling and deemed unopposed because the submission date has passed and the respondent has not filed a response.[1] After careful consideration of the motion, the entire record, and the applicable law, the Court is of the opinion that the motion should be GRANTED, as explained below.

**Factual and Procedural Background**

Plaintiff Tamer Mansour, a United States citizen of Arab descent, was employed as a pilot by Defendant until his termination on January 13, 2003. The termination allegedly resulted from Plaintiff's repeated violations of Defendant's attendance policy. The first documented violation occurred in January 2002, when Plaintiff received an "Unable to Contact" ("UTC") for his failure to make himself available while on paid reserve duty. A UTC is issued when the company attempts to call the reserve pilot and the pilot fails to return the call within 15 minutes. The second violation

---

[1]*See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 20 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition).

occurred shortly thereafter on March 4, 2002.  In this instance, Plaintiff apparently left his standby shift to go to the dentist without advising anyone in the company, which resulted in a three hour delay of a flight to which Plaintiff was subsequently assigned.  As a result, Plaintiff received a two week suspension without pay and a "Termination Warning" letter.  The letter warned Plaintiff that his "inappropriate, unprofessional behavior [was] unacceptable" and that "[a]ny further occurrences of this nature [would] result in [his] termination."

The final incident leading to Plaintiff's termination took place on January 3, 2003.  On this date, Plaintiff was assigned as Captain on Express Flight 2606 from Houston to Memphis, which was scheduled for departure at 7:40 A.M.  According to the Pilot Contract and Flight Operations Manual, Plaintiff was to report to the Crew Room for the flight 60 minutes in advance of departure, and then to report to his assigned duty station, or the aircraft, 30 minutes prior to departure time.  Plaintiff failed to satisfy both of these requirements.  Unable to locate his captain, Christopher Wiggin, who was assigned as the First Officer for the flight, called Crew Scheduling at approximately 7:15 A.M. and indicated that Plaintiff had not reported for duty.  Crew Scheduling placed Wiggin on hold and contacted Plaintiff on his cell phone at 7:16 A.M.  Plaintiff called back after this first call was cut off.  Plaintiff explained that he was "running a little bit behind schedule" and requested that Crew Scheduling instruct Wiggin to prepare the plane for flight.  At 7:21 A.M., Plaintiff called Crew Scheduling back and requested that he be replaced by a standby pilot so that the flight could avoid delay.  Plaintiff was told that this would result in a "Missed Trip," to which Plaintiff responded, "I'm not missing nothing."  Plaintiff did not call again.

Plaintiff arrived at the gate at approximately 7:35 or 7:36 A.M. and was met by Express Crew Tracker Dennis Duvall.  Duvall told Plaintiff that he had been replaced and thus could not board the aircraft.  Plaintiff would not accept this decision, and proceeded to argue with Duvall.  Neither

Duvall, nor Assistant Chief Pilot Paul Huyette, would accede to Plaintiff's demands to fly the plane. Although Plaintiff had first indicated in his deposition testimony that he could have gotten the flight out on time with his 7:35 A.M. late arrival, he later admitted that he could have done so only by releasing the parking break to register an "on-time" departure with the company's automated system, and then re-engaging the break for an additional 14 to 39 minutes to complete his remaining duties. With Plaintiff's replacement at the controls, however, the plane finally pushed back from the gate approximately 26 minutes behind schedule and arrived in Memphis 24 minutes late.

After receiving notice of this last incident, Chief Pilot Glen Clemons considered the three incidents described above, as well as records indicating that Plaintiff routinely entered the parking lot with his employee badge well after his report duty times. Although Clemons had already decided that the events as he understood them supported a decision of termination, a hearing was convened on January 13, 2003 in order to allow Plaintiff to present mitigating evidence that would change the termination decision. At the hearing, Plaintiff explained that he had overslept on the morning of January 7, 2003. As to the parking records that seemed to evidence a pattern of lateness, Plaintiff's explanation for these records was that sometimes his primary pass rider dropped him off and parked his car for him on days that the primary pass rider traveled. Clemons then recessed the meeting and pulled a travel itinerary request showing the dates the primary pass rider would have flown. His comparison revealed that none of the days that Plaintiff entered the lot late were days on which Plaintiff's primary pass rider actually traveled. After considering the evidence, Clemons decided to proceed with termination, which he confirmed by letter dated January 17, 2003.

Plaintiff commenced this lawsuit on March 8, 2004. In his complaint, Plaintiff alleges that Defendant intentionally discriminated against him on the basis of his national origin in violation of

Title VII. Plaintiff also alleges that Defendant's actions constitute wrongful discrimination based on age and further that those actions constitute the intentional infliction of emotion distress. Defendant filed its motion seeking summary judgment on all of Plaintiff's claims on January 4, 2005. As noted above, Plaintiff has not filed a response to Defendant's motion.

## Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). Normally, the Court must accept the evidence of the non-movant and draw all justifiable inferences in favor of that party, *see Matsushita*, 475 U.S. at 585-87, but Plaintiff has not responded to submit or point to evidence creating fact issues. Although it is error for the Court to grant summary judgment simply because the non-movant fails to

4

respond, the Court may decide the merits of the case based on the Defendant's Motion and supporting evidence since Plaintiff has provided no controverting evidence. *See John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707-08 (5th Cir. 1985); *Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988) (noting that when the non-movant submits no summary judgment response, the district court may accept as undisputed the facts in the motion for summary judgment).

## Discussion

In its motion, Defendants seeks summary judgment on all claims asserted by Plaintiff. Regarding Plaintiff's discrimination claims, Defendant maintains Plaintiff has not and cannot produce any fact issues regarding the validity of Defendant's legitimate, non-discriminatory reason for Plaintiff's termination. As to Plaintiff's claim for intentional infliction of emotional distress, Defendant contends that summary judgment is appropriate because Plaintiff failed to identify any outrageous conduct by Defendant or any corresponding severe emotional distress. As noted above, Plaintiff has not responded to Defendant's motion.

**I.     Discrimination Claims**

Although the complaint is not entirely clear on the nature of the discrimination claims, Plaintiff apparently asserts claims under Title VII based on disparate treatment and hostile work environment theories. Additionally, without providing any factual background or context, Plaintiff alleges that "Defendants' [sic] actions constitutes [sic] wrongful discrimination based on age . . . ." The Court will address each claim below.

Claims under Title VII premised on disparate treatment grounds, as well as age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (2000),

are considered under the familiar burden-shifting approach outlined in *McDonnell Douglas*. That is, Plaintiff must demonstrate a prima facie case of discrimination. If he does so, the burden shifts to Defendant to articulate a legitimate, non-discriminatory basis for its employment decision. If Defendant meets this burden, to prevail on either his Title VII or ADEA claim, Plaintiff must demonstrate that Defendant's articulated reason is a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Moreover, following the United States Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Fifth Circuit recently announced a modified burden-shifting approach that incorporates a mixed-motive analysis in the final stage under *McDonnell Douglas*. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). However, this analysis only applies to circumstances in which there are legitimate and illegitimate motivations alleged for the employment decision by the employer. *See Keelan v. Majesco Software, Inc.*, ___ F.3d ___, 2005 WL 834481, *7 (5th Cir. April 12, 2005). Because this case has not been presented as a mixed-motive case and the facts do not support such an approach, the Court will not apply the mixed-motive analysis. *Id.* (affirming district court's refusal to apply mixed-motive analysis where plaintiff requested such an analysis, but district court concluded approach was not warranted under the facts).

In this case, the Court agrees with Defendant that Plaintiff has not met his burden to demonstrate the presence of fact issues regarding the last stage of the analysis. Defendant has offered evidence establishing that Plaintiff had been warned about his attendance issues. In fact, the undisputed evidence is that Plaintiff had been placed on notice that any future attendance problems could result in his termination. The evidence indicates that Plaintiff violated company policies by

6

arriving late for the flight scheduled on January 7, 2003 after he admittedly overslept. Plaintiff was terminated as a consequence. Furthermore, the evidence does not disclose that any similarly situated employees of Defendant were treated differently. In particular, unlike Plaintiff, none of the individuals cited by Plaintiff in his deposition testimony had received a termination warning prior to the alleged attendance issues cited by Plaintiff for comparison. In sum, Plaintiff has not established the presence of fact issues so as to avoid summary judgment on these claims.

Likewise, no fact issues exist as to Plaintiff's hostile work environment claim. To survive summary judgment on a claim of hostile work environment in violation of Title VII, a plaintiff must create a fact issue on each of the elements of the claim: (1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment. *See Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). In determining whether a working environment is hostile or abusive, all circumstances must be considered, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). The above inquiries serve to ensure that Title VII does not become a "a general civility code," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998), for it is well-settled that the mere utterance of "an ethnic or racial epithet which engenders offensive feelings in an employee" does not sufficiently alter the terms and conditions of employment in a way that violates Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)).

As support for this claim, Plaintiff points to two derogatory remarks allegedly made by a supervisor relating to Plaintiff's national origin. However, these remarks apparently occurred in 1999, and there is no indication that Plaintiff availed himself of the specific system provided by Defendant's policies for complaining about such behavior by a co-worker. As such, even assuming these comments were made to Plaintiff, the Court cannot conclude they rise to the level of being so severe or pervasive that they alter the conditions of employment and create an abusive working environment. *See Walker*, 214 F.3d at 625; *see also Patel v. Midland Memorial Hospital & Med. Ctr.*, 298 F.3d 333, 336-38 (5th Cir. 2002) (affirming summary judgment where no fact issues existed based on isolated remarks that were remote in time and unrelated to any employment decision). Accordingly, summary judgment is appropriate on this claim as well.

## II.     Intentional Infliction of Emotional Distress

Defendant also seeks summary judgment as to Plaintiff's claim for intentional infliction of emotional distress. Under Texas law, intentional infliction of emotional distress requires proof (1) that the defendant acted intentionally or recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) that the defendant's actions caused the plaintiff emotional distress, and (4) that the emotional distress suffered by the plaintiff was severe. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir.1996) (citing *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989)). "Conduct is 'outrageous,' for purposes of an intentional infliction of emotional distress claim, 'if it surpasses all bounds of decency, such that it is utterly intolerable in a civilized community.'" *Id.* (quoting *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993) (internal quotation marks omitted)). The Fifth Circuit has held that when an intentional infliction of emotional distress

claim is made, "Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Ugalde*, 990 F.2d at 243. Courts have been hesitant to find extreme and outrageous conduct based on isolated incidents of name-calling or the use of epithets. *See, e.g., Ugalde*, 990 F.2d at 243 (holding employer's repeated references to an Hispanic employee as "wetback" insufficiently outrageous and extreme to support a claim for intentional infliction of emotional distress); *Grant v. UOP, Inc.*, 972 F. Supp 1042 (W.D. La.1996) (ruling that under Louisiana law the use of the word "nigger" three times in plaintiff's presence does not amount to extreme and outrageous conduct).

In this case, the Court cannot discern any facts within the summary judgment record that would rise to the level necessary to maintain this cause of action. At most, the evidence indicates that Plaintiff was exposed to derogatory remarks in 1999 regarding his national origin. This lawsuit was filed March 8, 2004. Assuming the alleged remarks actually took place, the Court concludes that such comments, while inappropriate, do not constitute extreme and outrageous behavior. The Court also concludes that the record contains no evidence indicating that Plaintiff suffered severe emotional distress as a result of the alleged remarks. Thus, summary judgment is proper.

## Conclusion

For the foregoing reasons, Defendant Expressjet Airlines, Inc.'s Motion for Summary Judgment is hereby GRANTED. Final judgment will be entered on even date herewith.

Signed this 12th day of May, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE